UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TRACY ANN JENISH,

        Plaintiff,

                                Case No. 05-CV-73648

vs.                               HON. GEORGE CARAM STEEH

MONARCH VELO LLC dba
CATLIKE USA, a Texas Corporation,
THE KREB CYCLE, a New York Corporation,
and CATLIKE SPORT COMPONENTS SL,
a Spanish Corporation,

        Defendants.

_____/


## OPINION AND ORDER GRANTING DEFENDANT THE KREB CYCLE'S MOTION FOR SUMMARY JUDGMENT (DOCUMENT # 38)

### INTRODUCTION

Before the court in this product liability lawsuit is a motion for summary judgment brought by defendant The Kreb Cycle, a New York seller of bicycle equipment, in which it asserts it is entitled to judgment on all counts in the complaint.[1] Because the court agrees that plaintiff has not raised a question of material fact as to causation of her injuries by an allegedly defective bicycle helmet, defendant's motion is granted as set forth below.

---

[1] The other defendants to this action have not filed answers to the complaint.

BACKGROUND

Plaintiff Tracy Jenish was riding with a bicycling club on Wing Lake Road in the area of Bloomfield Hills, Michigan on September 26, 2002, when she fell off her bike and suffered serious bodily injuries, including injuries to her head. She was wearing a helmet called a "Catlike Kompact," manufactured by defendant Catlike Sport Components SL, a Spanish corporation, distributed by defendant Monarch Velo LLC, a Texas corporation[2], and sold to the plaintiff by movant-defendant Kreb Cycle, a New York corporation.

The Kreb Cycle (hereinafter "defendant") started carrying these helmets after its owner attended a trade show in Las Vegas, where a model of the Catlike Kompact helmet was on display. Defendant ordered the helmets from Monarch Velo LLC, d/b/a "Catlike USA," a Texas distributor. The helmets came with the manufacturer's label stating they complied with U.S. Consumer Product Safety Commission ("CPSC") standards. Although there are no records of the sale, defendant does not dispute that it sold the helmet to plaintiff. Plaintiff's recollection, according to her deposition, is that she called in with a credit card or ordered it online, at some point during the year preceding the accident.

In 2003, some months after plaintiff's accident, the Catlike Kompact helmet was the subject of a voluntary manufacturer recall. Defendant has produced a copy of the

---

2 Answers to the complaint by the remaining defendants have not been filed, and defendant Kreb Cycle states in its motion that the other defendants are in default. The docket reflects that a clerk's entry of default was filed as to defendant Monarch Velo, L.L.C. on June 2, 2006.

CPSC's announcement of this recall, which is reproduced below in its entirety, with the exception of the generic CPSC headings and contact numbers:

> *****
>
> CPSC, Monarch Velo, LLC doing business as Catlike USA Announce Recall of Bike Helmets
> Washington, D.C. - The U.S. Consumer Product Safety Commission announces the following recall in voluntary cooperation with the firm below. Consumers should stop using recalled products immediately unless otherwise instructed.
>
> **Name of product**: Catlike Kompact™ Bike Helmets
>
> **Units**: 2,250
>
> **Distributor**: Monarch Velo, LLC, doing business as Catlike USA, of Houston, Texas
>
> **Hazard**: The helmets fail impact testing required under CPSC's safety standard for bicycle helmets, violating the Consumer Product Safety Act.
>
> **Incidents/Injuries**: None reported.
>
> **Description**: This recall involves Catlike Kompact™ adult bicycle helmets. The helmets were sold in two sizes (small/medium and large/extra large) and various colors. The sizing label inside the helmets reads "Kompact" and "SM/MD" or "LG/XL."
>
> **Sold at**: Bicycle shops nationwide sold the helmets from March 2002 through February 2003 for about $130.
>
> **Manufactured in**: Spain
>
> **Remedy**: Contact Monarch Velo for information on receiving a free replacement helmet.
>
> **Consumer Contact**: Contact Monarch Velo toll-free at (877) 228-5646 between 9 a.m. and 5 p.m. CT Monday through Friday or visit the firm's web site at www.catlike-usa.com
>
> **Media Contact**: Chris Watson at (877) 228-5646.

Exhibit D to Defendant's Motion. Plaintiff obtained a replacement Catlike helmet after announcement of the recall.

This action was filed in federal court on the basis of diversity of citizenship in September 2005. Plaintiff's First Amended Complaint, filed September 29, 2005, makes a common claim against all three defendants, asserting negligence, gross negligence, and breach of warranty in the design, manufacture, and distribution of an unmerchantable, "untested" bicycle helmet that failed to protect against injury to the head.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir.

2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

Kreb Cycle asserts in its motion that it is entitled to judgment as to all three of plaintiff's claims: negligence, gross negligence, and breach of warranty. In response, plaintiff asserts it is "only relying on the implied warranty of fitness and merchantability

5

as to this Defendant and will not, therefore, respond to Defendant's arguments as to negligence and gross negligence." Accordingly, judgment is hereby granted for Kreb Cycle as to plaintiff's negligence and gross negligence claims.

The sole claim remaining as to this defendant is plaintiff's breach of warranty claim. Plaintiff concedes defendant made no express warranty regarding this helmet. Accordingly, proceeding on a cause of action for breach of an implied warranty, plaintiff asserts that she has established a prima facie case of breach of implied warranty under Michigan law,[3] citing to this court's case of <u>Konstantinov v. Findley Ford Lincoln Mercury</u>, 2006 WL 3299487. As set forth in that case, under the Michigan Tort Reform Act, effective in 1996,

> (6) In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless either of the following is true:
> (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries.
> (b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

Mich. Comp. Laws Ann. § 600.2947(6).

Defendant's argument for summary judgment on this claim is that plaintiff has not come forward with any evidence of a specific defect in the helmet, and has not drawn any kind of causal connection between the alleged defect and her head injuries. It cites to <u>Mascarenas v. Union Carbide</u>, 196 Mich. App. 240, 249 (1992) for the elements of a product liability case under Michigan law: proof that the defendant supplied a defective

---

[3] Although the retailer was a New York seller, neither party asserts applicable law other than that of Michigan.

product, and that the defect proximately caused the plaintiff's injury. Defendant argues that plaintiff relies only on the helmet's later recall, disclosed in a 5/22/03 CPSC press release (stating that the recall was occurring "in voluntary cooperation with" the U.S. distributor) and conclusory statements by an expert, neither of which establish a question of material fact as to proximate cause.[4]

The court agrees with the defendant. Although precedent such as <u>Mills v. Curtoni, Inc.</u>, 238 F.Supp.2d 876, 886 (E.D. Mich. 2002) and the very recent decision in <u>Coleman v. Maxwell Shoe Company, Inc.</u>, 2007 WL 551608 (E.D. Mich. 2007) lend support to defendant's argument concerning non-manufacturing sellers and the need for a showing of negligence in failing to detect a product's defect, this case must be dismissed whether or not such evidence is required.

Plaintiff's expert's initial report, created by Tyler A. Kress, Ph.D. in Knoxville, Tennessee, dated October 6, 2006, summarily lists plaintiff's injuries following the accident. It then lists all of the expert's qualifications, his fees, and the records he reviewed. These are a 9/26/2002 CT scan of plaintiff's head; the hospital's discharge summary; a letter of April 3, 2003 by a Jon Wardner, M.D. stating plaintiff's disability; the CPSC announcement of the helmet recall; and the plaintiff's deposition. Dr. Kress also states that he met with the plaintiff. The remainder (and the entire substance) of his letter/report stated only a conclusion that a "defect" of the helmet was "directly related to the inadequacies of the Catlike Kompact bike helmet."

---

[4] Defendant also addresses plaintiff's weak assertion, in answers to interrogatories, that defendant "had a duty to determine whether the model helmet in question did in fact meet CPSC standards." As defendant argues, there is no such duty required by Mich. Comp. Laws Ann. § 600.2947(6), set forth above.

Defendant then brought a motion, granted by the magistrate, for sanctions and to require a supplemental report by November 15, 2006, containing a "complete statement of all opinions to be expressed and the basis and reasons therefor..." A supplemental report was subsequently created by Dr. Kress. That report, dated November 15, 2006, is set forth below in its entirety:

> Dear Mr. Katkowsky:
>
> This is to supplement my report of October 6, 2006, regarding the above-styled cause.
>
> 1) Use: It is my opinion that it is foreseeable that some consumers will sustain a preventable head injury due to the impact performance (or lack thereof) of the helmet while using it in an appropriate manner as it is intended to be used.
>
> Protective head gear and bicycle helmets have the ability to eliminate or greatly reduce traumatic head and brain injury when properly designed an manufactured. To ensure that bicycle helmets available in the consumer market adequately serve these goals, the Consumer Product Safety Commission has created safety standards for a range of criterion, including impact attenuation (CPSC's Safety Standard for Bicycle Helmets Final Rule: 16 CFR Part 1203).
>
> Bicycle helmets that have adequate impact attenuation performance, as set forth by the CPSC's safety standards, and are used in an appropriate, reasonable, and correct manner are highly successful in preventing or greatly reducing traumatic head and brain injury. As found in a 1989 study by Thompson et al and explicitly cited in the CPSC's Safety Standard for Bicycle Helmets Final Rule (16 CFR Part 1203, pg. 11713), riders with helmets had an 85% reduction in head injury risk, and 88% reduction in brain injury risk.
>
> 2) Reason for Injury: Ms. Jenish's head injury is directly related to the inadequacies of the Catlike Kompact bike helmet.
>
> The CPSC's Safety Standard for Bicycle Helmets Final Rule (16 CFR Part 1203) explicitly establishes a performance test to "ensure that helmets will adequately protect the head in a collision" (pg. 11714). As a component of this performance test, helmets are required to not exceed a peak headform acceleration of 300 g for any impact. This pass/fail criterion of

300 g or below is consistent with other standards such as the ANSI, Snell, and ASTM (CPSC's Safety Standard for Bicycle Helmets Final Rule (16 CFR Part 1203, pg. 11714; Halstead 2001). The Catlike Kompact bike helmet is inadequate due to the fact that it failed impact standards that pertain to the design and performance of the helmet in a foreseeable use that may result in an impact to the head.

In the accident on September 26, 2002, Ms. Jenish hit a curb while riding her bicycle, was ejected, and impacted her head. She reported a loss of consciousness at the scene, and her relevant injuries include, but are not limited to, a traumatic brain injury and a subdural hematoma. Ms. Jenish sustained a direct impact to the back of the head (occipital region) which corresponds to a right occipatal scalp hematoma and the area of impact and failure seen in the helmet. Contact head impacts, such as this, result in predominantly linear acceleration of the head and brain, with small components of angular acceleration. Linear acceleration can product focal brain injuries, such as subdural hematomas, as well as concussions; as seen in Ms. Jenish.

The severity of the head injury sustained by Ms. Jenish is a direct result of the inability of the Catlike Kompact to comply to the CPSC's safety standards. Subdural hematomas, similar to the one sustained by Ms. Jenish, are commonly caused by an impact to the occipital region (Kleiven 2003, Zhou et al 1995). The acceleration of the head in an occipital impact exceeded the values of what a reasonably designed and protective headgear would have given the wearer. Due to the failure of the Catlike Kompact bicycle helmet to comply to the CPSC's impact safety standards Ms. Jenish's head experienced higher acceleration values resulting in a more serious traumatic brain injury than would have been experienced if the helmet was compliant with the impact standards of the CPSC.

3) Design Defect: The helmet is inherently dangerous and defective by design in that it fails to comply with impact testing standards required under CPSC's safety standard for bicycle helmets, violating the Consumer Product Safety Act.

The impact attenuation standards of the CPSC's Safety Standard for Bicycle Helmets Final Rule (16 CFR Part 1203) was created in order to "ensure that helmets will adequately protect the head in a collision" (p. 11714). Failure to meet this standard endangers consumers by failing to prevent or reduce injury.

> If you have any questions or need anything further please do not hesitate to contact me.
>
> Sincerely,
> /s/
> Tyler Kress, Ph.D., CIE

Exhibit I to Defendant's Motion and Exhibit 2 to Plaintiff's Response.

Defendant contends that all this report arguably establishes is that the helmet failed to "meet standards;" and that plaintiff has failed to connect that alleged, undefined defect to her injuries. As defendant asserts, there is no evaluation of items such as plaintiff's speed at the time of the crash, location of impact, descriptive information concerning the object struck or other details of the accident. Defendant points to the serious injuries sustained by the plaintiff in the crash, including fractured vertebrae, a crushed rib cage, fractured collarbone, bulging spinal discs, and a collapsed lung, and asserts that helmets don't rule out *any and all* head injuries, *in any crash or at any speed*, but serve to help protect against head injuries. Plaintiff has not identified the manufacturing or design elements of the helmet that led to voluntary recall nor has accident reconstruction tied these elements to the plaintiff's injuries.

As discussed at oral argument, plaintiff has not brought forth any evidence of the *reason* the Catlike Kompact helmet failed impact testing.[5] All that has been presented is a one page press release from the CPSC, set forth above, including a statement that

---

[5] Plaintiff has failed to identify any specific claimed defect, such as deficiencies in the suspension or cushioning system, hardness or thickness of the plastic, ventilation engineering, overall shape, the strapping mechanism, or any other particular aspects of the helmets in general, much less the helmet worn by plaintiff. Without knowing the defect that motivated a voluntary recall, and without testing of the helmet worn by plaintiff, it is impossible to conclude that a defect caused her injury.

"[t]he helmets fail impact testing required under CPSC's safety standard for bicycle helmets, violating the Consumer Product Safety Act." Without additional information from the CPSC or any other source, or the results of any independent testing, it is the opinion of the court that Dr. Kress' statement that "[t]he severity of the head injury sustained by Ms. Jenish is a direct result of the inability of the Catlike Kompact to comply to the CPSC's safety standards" can be nothing but inadmissible speculation. Accordingly, it is the court's determination that plaintiff has not produced evidence to raise a question of material fact regarding causation. Defendant's motion will be granted.

## CONCLUSION

Because plaintiff has failed to raise a question of material fact as to the proximate causation of her head injuries by an alleged defect in her bicycle helmet, summary judgment will enter as to all claims brought by the plaintiff against this defendant.

IT IS SO ORDERED.

Dated: May 9, 2007

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 9, 2007, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---